UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
JAMES GALATRO,

                Plaintiff,

                                    <u>MEMORANDUM & ORDER</u>
       -against-                    14-CV-5284(JS)

CAROLYN W. COLVIN, Acting Commissioner
of Social Security,

                Defendant.
----------------------------------------X
APPEARANCES
For Plaintiff:        Christopher James Bowes, Esq.
                      Law Offices of Christopher James Bowes
                      54 Cobblestone Dr.
                      Shoreham, NY  11786

For Defendant:       Matthew Silverman, Esq.
                      United States Attorney's Office
                      Eastern District of New York
                      271 Cadman Plaza East, 7th Floor
                      Brooklyn, New York 11201

SEYBERT, District Judge:

       Plaintiff James Galatro ("Plaintiff") commenced this

action under Section 205(g) of the Social Securities Act, as

amended, 42 U.S.C. § 405(g), challenging the Commissioner of

Social Security's (the "Commissioner") denial of his application

for disability insurance benefits.  Presently before the Court

are Plaintiff's and Commissioner's motions for judgment on the

pleadings.  (Docket Entries 8, 14.)  For the following reasons,

the Commissioner's motion is GRANTED, and Plaintiff's motion is

DENIED.

BACKGROUND[1]

Plaintiff filed an application for Social Security Disability benefits on June 6, 2011, claiming a disability since May 5, 2011. (R. 116-17.) Plaintiff attributes his disability to chronic recurrent sinusitis and post-traumatic stress disorder ("PTSD"). (R. 144.)

After his application for Social Security Disability benefits was denied on January 13, 2012, Plaintiff requested a hearing before an administrative law judge. (R. 59-71.) The hearing took place on November 19, 2012 before administrative law judge Ronald D. Waldman (the "ALJ"). (R. 23.) At the hearing Plaintiff amended his alleged onset disability date to June 24, 2011. (R. 10, 29.) The ALJ heard testimony from Plaintiff and Dr. David Vandergoot, a vocational expert. (R. 24.)

On December 11, 2012, the ALJ issued his decision finding that Plaintiff is not disabled. (R. 7.) Plaintiff then sought review of the ALJ's decision by the Appeals Council. (R. 1-6.) However, on July 7, 2014, the Appeals Council denied Plaintiff's request for review, stating that it "found no reason under [its] rules to review the Administrative Law Judge's

---

[1] The facts of this case are taken from the administrative record filed by the Commissioner on December 9, 2014. (Docket Entry 6.) "R." denotes the administrative record.

decision." (R. 1.) Thus, the ALJ's decision is considered the final decision of the Commissioner.

I.  <u>Evidence Presented to the ALJ</u>

    A.  <u>Testimonial Evidence</u>

Plaintiff was born in 1960 and holds a general equivalency diploma. (R. 27.) He lives with his two sons. (R. 27-28.) He was previously employed as a firefighter with the New York City Fire Department ("FDNY") from January 21, 1990 to April 20, 2010.[2] (R. 145.) Notably, Plaintiff was a first responder to the World Trade Center attacks on September 11, 2001. (<u>See</u> R. 30.)

Plaintiff testified that he stopped working in 2011 after receiving disability retirement as a result of sinus surgery and PTSD. (R. 29-30.) Plaintiff further testified that he could not "tolerate any, like, types of fumes or any types of smells." (R. 31.) When asked what type of smells affected him, Plaintiff responded "cleaning fluids." (R. 31.) Plaintiff testified that his PTSD related to 9/11 and his self-medication with alcohol. (R. 33-34.) Plaintiff also testified that he suffered from sleep apnea. (R. 33.)

In a Function Report dated November 2, 2011, Plaintiff indicated that before his illness he would go to the gym, but he

_____

[2] At the hearing, however, Plaintiff stated that he stopped working in June 2011. (R. 28-29.)

was now depressed and liked being at home. (R. 154.) He noted that he often left his house and was capable of driving a car. (R. 155.) Plaintiff reported that he was able to cook twice a week and ordered takeout five days per week. (R. 157.) He shopped for food weekly. (R. 156.) Plaintiff reported that he enjoyed watching television and reading newspapers. (R. 156.) He also spent time with his girlfriend once per week. (R. 158.) Plaintiff noted that he was able to pay bills, count change, and handle a savings account. (R. 156.)

Plaintiff reported that his illness did not affect his ability to lift, stand, sit, climb stairs, kneel, squat, reach, use hands, see, hear, or talk. (R. 158-59.) Plaintiff stated that his illness affected his walking due to sinus irritation with allergies and that he could walk for a couple of blocks before resting for five minutes. (R. 159, 161.)

Plaintiff further reported that after 9/11, he was worried about another terror attack and scared to drive in the city. (R. 160.) He could travel alone but not over bridges. (R. 162.) Plaintiff also reported having panic attacks. (R. 160.) When he had these attacks, it took him approximately "5 minutes to get [his] mind off to something else." (R. 162.) Plaintiff reported seeing Dr. Henry E. Edwards once a month, and taking Lexapro, Xanax, and Ambien. (See R. 162.)

Dr. Vandergoot, an impartial vocational expert, also appeared and testified. (R. 48-54.) The ALJ asked Dr. Vandergoot to assume the residual functional capacity ("RFC") of an individual who: (1) was born in 1960; (2) had at least a high school diploma; (3) speaks English; and (4) "perform work at all exertional levels, but could not do any jobs where they would be exposed to environmental irritants, including but not limited to fumes." (R. 49-50.) Dr. Vandergoot testified that this hypothetical individual could not perform Plaintiff's past work as a firefighter but could perform an unskilled office job, such as (1) a photocopy machine operator, a position with approximately 66,000 jobs in the national economy; (2) a general office clerk, a position with approximately 2,700,000 jobs in the national economy; and (3) an addressing clerk, with approximately 100,000 jobs in the national economy. (R. 50-51.)

B. Medical Evidence

1. Henry E. Edwards, M.D.

Dr. Edwards, a psychiatrist, treated Plaintiff from September 14, 2010 to November 16, 2012. (Comm'r's Br., Docket Entry 9, at 5-6.) Dr. Edwards completed a Mental Residual Functional Capacity Assessment on November 16, 2012. (R. 320-22.) Dr. Edwards found that Plaintiff was not significantly limited in his abilities to remember locations and work-like procedures and understands either simple or detailed

instructions. (R. 320.) Further, Plaintiff experienced no significant limitations in his abilities to carry out very short and simple instructions, sustain an ordinary routine without special supervision, work in coordination with or in proximity to others without being distracted by them, and make simple work-related decisions. (R. 320.) Without any significant limitations, Plaintiff could interact appropriately with the general public, ask simple questions or request assistance, accept instructions and respond appropriately to criticism from supervisors, get along with co-workers or peers without distracting them or exhibiting behavioral extremes, maintain socially appropriate behavior, and adhere to basic standards of neatness and cleanliness. (R. 321.) Dr. Edwards also found that Plaintiff could respond appropriately to changes in the work setting, maintain awareness of normal hazards, and take appropriate precautions without limitations. (R. 321.)

Dr. Edwards noted that Plaintiff was moderately limited in his ability to carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, and be punctual within customary tolerance. (R. 320.) Plaintiff was further moderately limited in his ability to complete a normal workday and workweek without interruptions from psychologically based

symptoms and his ability to perform at a consistent pace without an unreasonable number and length of rest periods. (R. 321.)

### 2. Paul Herman, Ph.D.

Dr. Herman, a consultative psychologist, completed a psychiatric evaluation of Plaintiff on December 14, 2011. (R. 237.) Dr. Herman noted that Plaintiff had adequate social skills and exhibited no abnormality in gait, posture, motor behavior, or eye contact. (R. 238.) Plaintiff's speech was within normal limits, and his thought processes were coherent and goal oriented. (R. 238-39.) Dr. Herman found that Plaintiff's recent memory skills were mixed, but his remote memory skills were intact. (R. 239.) Plaintiff's cognitive functioning was average, and his insight and judgment were fair. (R. 239.) Dr. Herman noted that Plaintiff could follow and understand simple directions and instructions, perform simple tasks, maintain attention and concentration at a level adequate for many vocational endeavors, maintain a regular schedule, make appropriate decisions, and relate adequately with others. (R. 239-40.) Dr. Herman further noted that Plaintiff might experience some difficulty performing complex tasks and appropriately dealing with stress. (R. 240.) Critically, however, Dr. Herman found that Plaintiff's psychiatric problems were not significant enough to interfere with his ability to

function on a daily basis to the extent that all vocational functioning would be precluded.  (R. 240.)

### 3.  Daryl P. Di Dio, Ph.D.

Dr. Di Dio, an impartial medical expert, completed a Medical Source Statement of Ability to Do Work-Related Activities (Mental) on September 28, 2012.  (See R. 307-09.) Dr. Di Dio found that Plaintiff had no restrictions understanding and remembering simple and complex instructions and carrying out simple instructions.  (R. 307.)  Notably, Plaintiff's ability to make judgments on simple work-related decisions was not impaired.  (R. 307.)  Dr. Di Dio further noted that Plaintiff had no limitations interacting appropriately with supervisors, co-workers, and the public as well as responding to changes in the routine work setting.  (R. 308.)  Dr. Di Dio, however, noted that Plaintiff experienced mild to moderate restrictions carrying out complex instructions and making judgments on complex work-related decisions.  (R. 307.) Plaintiff had mild limitations in maintaining concentration, persistence, or pace and handling stress.  (R. 311.)  However, Plaintiff suffered no restrictions in activities of daily living or in maintaining social functioning.  (R. 311.)

### 4.  Michael Shohet, M.D.

Dr. Shohet, a treating ear, nose, and throat specialist, had treated Plaintiff from 2010 to 2012.  On

April 22, 2010, Plaintiff saw Dr. Shohet with complaints of facial pressure, headaches, sore teeth, and difficulties sleeping. (R. 290-92.) Two months later, Plaintiff underwent surgery for chronic sinusitis, nasal septal deformity, and nasal airway obstruction. (R. 217.) Subsequently, Plaintiff reported that his nasal obstruction had improved and denied headaches or postnasal drainage. (R. 283.) Plaintiff also reported that his sensitivity to heat and smoke through his breathing and sleeping had markedly improved. (R. 280.)

Dr. Shohet diagnosed Plaintiff with chronic rhinosinusitis and recommended that Plaintiff avoid smoke and irritants. (R. 282.) On October 20, 2010, Plaintiff complained of nasal congestion and dry cough, with clear rhinorrhea. (R. 277.) Two months later, Plaintiff complained of headaches and sensitivity to any airway irritant but was doing well with improved nasal breathing and pressure symptoms. (R. 274.) A nasal endoscopy was performed, and it revealed widely patent ostia. (R. 274.) Dr. Shohet treated Plaintiff in January 2011 for severe headaches and teeth pain. (R. 272.) A nasal endoscopy performed in March 2011 revealed widely patent ostia bilaterally with mild polypoid edema. (R. 268-70.)

In April 2011, Plaintiff complained of nasal congestion and facial pressure, and Dr. Shohet noted moderate hypertrophy of the right inferior turbinate. (R. 271.) Dr. Shohet

continued to treat Plaintiff in February 2012 for acute exacerbation of chronic rhinosinusitis and in May 2012 for head pressure, nasal congestion, and ear congestion. (R 264-66, 298-302.)

     5.   Aryeh L. Klahr, M.D.

In March 2010, Dr. Klahr, an examining psychiatrist, performed an independent psychiatric evaluation of Plaintiff. (See R. 211-16.) Dr. Klahr found that Plaintiff was "permanently unfit to perform full firefighting duties." (R. 215.) Dr. Klahr also noted that Plaintiff's attention and concentration as well as recent and remote memory were intact. (R. 215.) Further, Dr. Klahr noted that Plaintiff's intelligence was average and his judgment was fair. (R. 215.)

     6.   K.J. Kelly, M.D.

In a letter dated October 28, 2010, Dr. Kelly, Chief Medical Officer for the FDNY, noted that the Medical Board Committee recommended that Plaintiff be found unfit for firefighting duties due to chronic recurrent sinusitis and PTSD. (R. 318.)

## II.  Decision of the ALJ

After reviewing the evidence in the record, the ALJ issued his decision on December 11, 2012, finding that Plaintiff was not disabled. (R. 7-18.) The ALJ concluded that Plaintiff did not have an impairment or combination of impairments equal

to one of the impairments listed in Appendix 1 of the Regulations. (R. 12-13.)

The ALJ further concluded that Plaintiff had the RFC to perform a full range of work at all exertional levels but with non-exertional limitations that limited him to occasional contact with the public and avoidance of respiratory irritants. (R. 13-14.) In other words, Plaintiff was unable to perform his past relevant work because of his non-exertional limitations. (R. 17.) In reaching his decision, the ALJ accorded "great weight" to Drs. Herman, Di Dio, and Edwards concerning Plaintiff's RFC to the extent that they were consistent with and supported by the clinical findings. (R. 16.)

The ALJ accorded "less weight" to Dr. Edwards's opinion that Plaintiff "has moderate difficulties carrying out detailed instructions . . . completing a normal work week, and performing at a consistent pace" because that opinion was inconsistent with clinical findings and Plaintiff's admitted activities. (R. 16.) Elsewhere, the ALJ accorded "some weight" to Drs. Klahr and Kelly, as they were consistent with the ALJ's findings and the opinions of Drs. Herman, Di Dio, and Edwards as well as treating records. (R. 16.) Finally, the ALJ accorded "less weight" to the opinion of the state agency psychological consultant because evidence at the hearing demonstrated that

Plaintiff's limitations exceeded what the psychological consultant had determined. (R. 16.)

III. <u>This Appeal</u>

Plaintiff commenced this appeal on September 10, 2014. (Docket Entry 1.) The Commissioner filed the administrative record and her Answer on December 9, 2014. (Docket Entries 6, 7.) On February 9, 2015, the Commissioner filed a motion for judgment on the Pleadings, and on March 31, 2015, Plaintiff filed a cross-motion for judgment on the pleadings. (Docket Entries 8, 14.) These motions are presently before the Court.

DISCUSSION

I. <u>Standard of Review</u>

In reviewing the ruling of the ALJ, this Court will not determine <u>de novo</u> whether Plaintiff is entitled to disability benefits. Thus, even if the Court may have reached a different decision, it must not substitute its own judgment for that of the ALJ. <u>See</u> <u>Jones v. Sullivan</u>, 949 F.2d 57, 59 (2d Cir. 1991). Instead, the Court must determine whether the ALJ's findings are supported by "substantial evidence in the record as a whole or are based on an erroneous legal standard." <u>Curry v. Apfel</u>, 209 F.3d 117, 122 (2d Cir. 2000) (internal quotations marks and citation omitted), <u>superseded by statute on other grounds</u>, 20 C.F.R. § 404.1560. If the Court finds that

substantial evidence exists to support the Commissioner's decision, the decision will be upheld, even if evidence to the contrary exists. See Johnson v. Barnhart, 269 F. Supp. 2d 82, 84 (E.D.N.Y. 2003). "Substantial evidence is such evidence that a reasonable mind might accept as adequate to support a conclusion." Id. (citing Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971)). The substantial evidence test applies not only to the ALJ's findings of fact, but also to any inferences and conclusions of law drawn from such facts. See id.

To determine if substantial evidence exists to support the ALJ's findings, this Court must "examine the entire record, including contradictory evidence and evidence from which conflicting inferences may be drawn." See Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (internal quotation marks and citation omitted). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g).

A.  Eligibility for Benefits

A claimant must be disabled within the meaning of the Social Security Act (the "Act") to receive disability benefits. See Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000); 42 U.S.C. § 423(a), (d). A claimant is disabled under the Act when he can show an inability "to engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's impairment must be of "such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

The Commissioner must apply a five-step analysis when determining whether a claimant is disabled as defined by the Act. See 20 C.F.R. §§ 404.1520, 416.920. First, the Commissioner considers whether the claimant is currently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a) (4)(i). Second, the Commissioner considers whether the claimant suffers from a "severe medically determinable physical or mental impairment" or a severe combination of impairments that satisfy the duration requirement set forth at 20 C.F.R. § 404.1509.[3] Third, if the impairment is "severe," the Commissioner must consider whether the impairment meets or equals any of the impairments listed in Appendix 1 of the Social Security regulations. 20 C.F.R. § 404.1520(a)(4)(iii). "These are

_____

[3] 20 C.F.R. § 404.1509 provides that "[u]nless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months."

impairments acknowledged by the Secretary to be of sufficient severity to preclude gainful employment. If a claimant's condition meets or equals the 'listed' impairments, he or she is conclusively presumed to be disabled and entitled to benefits." Dixon v. Shalala, 54 F.3d 1019, 1022 (2d Cir. 1995) (citation omitted). Fourth, if the impairment or its equivalent is not listed in the Appendix, the claimant must show that he does not have the residual functional capacity ("RFC") to perform tasks required in his previous employment. 20 C.F.R. § 404.1520(a) (4)(iv). Fifth, if the claimant does not have the RFC to perform tasks in his or her previous employment, the Commissioner must determine if there is any other work within the national economy that the claimant is able to perform. 20 C.F.R. § 404.1520(a) (4)(v). If not, the claimant is disabled and entitled to benefits.

The claimant has the burden of proving the first four steps of the analysis, while the Commissioner carries the burden of proof for the last step. See Shaw, 221 F.3d at 132. "In making the required determinations, the Commissioner must consider: (1) the objective medical facts; (2) the medical opinions of the examining or treating physicians; (3) the subjective evidence of the claimant's symptoms submitted by the claimant, his family, and others; and (4) the claimant's educational background, age, and work experience." Boryk ex

rel. Boryk v. Barnhart, No. 02-CV-2465, 2003 WL 22170596, at *8 (E.D.N.Y. Sept. 17, 2003).

Here, the ALJ performed the above analysis and found that Plaintiff had not engaged in substantial gainful activity since June 24, 2011. (R. 12.) The ALJ then found that Plaintiff had the following severe impairments: PTSD, anxiety disorder, sinusitis, and a history of an alcohol use disorder. (R. 12.) The ALJ next determined that none of Plaintiff's impairments or any combination of his impairments are the medical equivalent of any impairment enumerated in Appendix 1 of the Regulations. (R. 12.) The ALJ then found that although Plaintiff was incapable of performing his past work as a firefighter, he had the RFC to perform a full range of work at all exertional levels but with non-exertional limitations that limited him to occasional contact with the public and avoidance of respiratory irritants. (R. 13-14.) Using Section 204.00 in the Medical-Vocational Guidelines as a framework for decision-making and vocational expert testimony, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (R. 17.) The ALJ thus concluded that Plaintiff was not disabled. (R. 18.)

The Court must now determine whether the ALJ's decision is supported by substantial evidence. The Commissioner and Plaintiff have both moved for judgment on the pleadings, and

each party has raised several arguments in support of their respective motions. The Court will address each argument in turn.

A. <u>The Treating Physician Rule</u>

The treating physician rule is the cornerstone of Plaintiff's argument. Particularly, Plaintiff argues that this case should be remanded because the ALJ: (1) did not acknowledge the two-year relationship between Plaintiff and Dr. Edwards, (2) failed to consider Dr. Edwards's specialization, and (3) gave too much weight to Dr. Herman's opinion. (Pl.'s Br., Docket Entry 15, at 23-25.) In opposition, the Commissioner counters that the ALJ properly assigned "less weight" to Dr. Edwards's opinion that "Plaintiff had moderate difficulties carrying out detailed instructions, maintaining attention and concentration for extended periods, performing activities within a schedule, maintaining regular attendance, being punctual, completing a normal work week, and performing at a consistent pace" because it was inconsistent with other evidence in the Record. (Comm'r's Reply Br., Docket Entry 16, at 3.)

Under the treating physician rule, the medical opinions and reports of a claimant's treating physicians are generally afforded "special evidentiary weight." <u>Clark v. Comm'r of Soc. Sec.</u>, 143 F.3d 115, 118 (2d Cir. 1998). Specifically, the regulation states:

> Generally, we give more weight to opinions
> from your treating sources . . . . If we
> find that a treating source's opinion on the
> issue(s) of the nature and severity of your
> impairment(s) is well-supported by medically
> acceptable clinical and laboratory
> diagnostic techniques and is not
> inconsistent with the other substantial
> evidence in your case record, we will give
> it controlling weight.

20 C.F.R. § 404.1527(c)(2) (second and third alteration in original). To comply with the requirements of the treating physician rule, the ALJ must "set forth her reasons for the weight she assigns to the treating physician's opinion." Shaw, 221 F.3d at 134; see 20 C.F.R. § 404.1527; see also Snell v. Apfel, 177 F.3d 128, 134 (2d Cir. 1999) (explaining that "[a] claimant . . . who knows that her physician has deemed her disabled, might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied").

When an ALJ does not accord controlling weight to the medical opinion of a treating physician, the ALJ "must consider various 'factors' to determine how much weight to give to the opinion." Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004) (citation omitted) (per curiam); see also Schnetzler v. Astrue, 533 F. Supp. 2d 272, 286 (E.D.N.Y. 2008). These factors include:

> (1) the length of the treatment relationship
> and frequency of the examination; (2) the

> nature and extent of the treatment
> relationship; (3) the extent to which the
> opinion is supported by medical and
> laboratory findings; (4) the physician's
> consistency with the record as a whole; and
> (5) whether the physician is a specialist.

Schnetzler, 533 F. Supp. 2d at 286; see also 20 C.F.R. § 404.1527(d)(2); Halloran, 362 F.3d at 32. But see Khan v. Comm'r of Social Sec., No. 14-CV-4260, 2015 WL 5774828, at *14 (E.D.N.Y. Sept. 30, 2015) (noting that even though new regulations do not require an ALJ to re-contact a treating physician to resolve an inconsistency or efficiency, "it may be incumbent upon the ALJ to re-contact medical sources in some circumstances"); see also Vanterpool v. Colvin, No. 12-CV-8789, 2014 WL 1979925, at *17 (S.D.N.Y. May 15, 2014) ("Because the ALJ did not reject [the treating physician's] opinion due to gaps in the record, he was not required to contact the physician for further information or clarification.").

Nevertheless, the Second Circuit has made clear that the ALJ need not produce a "slavish recitation of each and every factor [set forth in 20 C.F.R. § 404.1527(c)] where the ALJ's reasoning and adherence to the regulation are clear." See Atwater v. Astrue, 512 F. App'x 67, 70 (2d Cir. 2013); see also Khan v. Astrue, No. 11-CV-5118, 2013 WL 3938242, at *15 (E.D.N.Y. July 30, 2013). Rather, the ALJ need only apply "the substance of the treating physician rule." Halloran, 362 F.3d

at 32. In Halloran, for example, "it [was] unclear on the face of the ALJ's opinion whether the ALJ considered (or even was aware of) the applicability of the treating physician rule." Id. at 32. Even still, the Second Circuit upheld the ALJ's opinion because "the substance of the treating physician rule was not traversed." Id. So too here.

As an initial matter, the ALJ did not categorically reject Dr. Edwards' findings. In fact, the ALJ gave "great weight" to his opinion in other areas. (See R. 16.) But in this specific area--Plaintiff having "moderate difficulties carrying out detailed instructions . . ., completing a normal work week, and performing at a consistent pace"--the ALJ gave "less weight" to Dr. Edwards's opinion. (R. 16.) Particularly, the ALJ stated that Dr. Herman's opinion and Plaintiff's own testimony compelled a different conclusion. Accord Fleming-Hogan v. Colvin, No. 14-CV-1891, 2015 WL 9462107, at *7 (E.D.N.Y. Dec. 28, 2015) (finding that the ALJ's decision did not violate the treating physician's rule where the treating physician's "opinion was inconsistent with the medical tests performed on Plaintiff and Plaintiff's own admissions regarding her capabilities"). Cf. Wagner v. Sec'y of Health and Human Servs., 906 F.2d 856, 861-62 (2d Cir. 1990) (holding that the Secretary's critique of the patient and treating physician's failure to present a record of disability-related symptoms

during the period in question failed because "a circumstantial critique by non-physicians, however thorough or responsible, must be overwhelmingly compelling in order to overcome a medical opinion").

For example, Dr. Edwards states that Plaintiff experiences certain issues "that clearly interfere with his social and any type of occupational functioning he might undertake." (R. 322 (emphasis added).) But in Dr. Herman's detailed report, he agrees that Plaintiff suffers from "psychiatric problems, but in and of themselves, they do not appear to be significant enough to interfere with [Plaintiff's] ability to function on a daily basis to the extent that all vocational functioning would be precluded." (R. 240.)

To bolster this point, the ALJ references Plaintiff's own admissions. (R. 16.) Specifically, the ALJ noted that Plaintiff was able to use the computer for e-mails and take care of his personal needs. (R. 14, 16.) Plaintiff could shop, do laundry, and drive an automobile. (R. 14, 16.) Plaintiff also went to restaurants, watched television, and read the newspaper. (R. 14, 16, 154, 156.) Further, Plaintiff indicated that he could pay bills, count change, and handle a savings account. (R. 16, 156.) Thus, Plaintiff's own admissions buttress the findings of Dr. Herman.

Moreover, as the Second Circuit aptly observed, "where the evidence of record permits us to glean the rationale of an ALJ's decision," the ALJ is not required to mention "every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient." Petrie v. Astrue, 412 F. App'x 401, 405 (2d Cir. 2011) (internal quotation marks and citation omitted). For instance, in his testimony before the ALJ, Plaintiff discussed his panic attacks--ostensibly a factor that Dr. Edwards considered to "clearly interfers with his social and any type of occupational functioning he might undertake." (R. 38, 46, 322 (emphasis added).) But Plaintiff testified that the panic attacks occurred once a month and lasted approximately ten minutes if Plaintiff took medication. (R. 38, 46.) Although this fact was not explicitly discussed in the ALJ's decision, it undercuts Dr. Edwards's theory that Plaintiff could not perform any type of occupation.

The ALJ, in theory, followed the spirit of the treating physician rule. One of the factors to consider is the consistency of Dr. Edwards's opinion with the record as a whole. 20 C.F.R. § 404.1527(c)(4). The ALJ only accorded less weight to a certain portion of Dr. Edwards's opinion that was inconsistent with the evidence. (R. 16.) The ALJ provided

sufficient reasons to reflect his decision based on Dr. Herman's findings and Plaintiff's admitted activities.

The ALJ, to be sure, did not mention Dr. Edwards's area of specialization or any board certifications he may hold, but the ALJ acknowledged that Dr. Edwards was a "treating psychiatrist." (R. 15-16.) Moreover, the ALJ references Exhibit 5F, which illustrates Dr. Edwards's two-year relationship with Plaintiff. (R. 320-22 (stating that Plaintiff "has been a patient of [Dr. Edwards] since 9/14/10").) Thus, even though the ALJ did not explicitly address every factor from 20 C.F.R. § 404.1527(c), the ALJ's reasons were not ambiguous.

Similarly, Plaintiff's other contention--that the ALJ gave too much weight to Dr. Herman's one-time psychological consultative examination--is meritless. As discussed above, the ALJ determined that Dr. Edward's opinion was inconsistent with Dr. Herman's clinical findings. (R. 16.) Dr. Herman noted that Plaintiff had adequate social skills. (R. 238.) Further, Plaintiff's appearance showed no abnormalities, and his speech was normal. (R. 238.) Plaintiff's thought processes were coherent and goal-directed, and his cognitive functioning appeared average. (R. 239.) Plaintiff's attention and concentration was intact, and his mood was neutral. (R. 239.) Dr. Herman found that Plaintiff was capable of "following and

understanding  simple  directions  and  instructions  [and]
maintaining  a  regular  schedule."  (R. 239-40.)  Thus,  the  ALJ
did  provide  "good  reasons"  for  attributing  "less  weight"  to  Dr.
Edwards'  findings  and  more  weight  to  Dr. Herman's  findings  on
this  particular  issue.

Accordingly,  the  Commissioner's  motion  is  GRANTED,  and
Plaintiff's  motion  is  DENIED.

## CONCLUSION

For  the  foregoing  reasons,  the  Commissioner's  motion
(Docket  Entry  8)  is  GRANTED,  and  the  Plaintiff's  motion  (Docket
Entry  14)  is  DENIED.  The  Clerk  of  the  Court  is  directed  to  mark
this  matter  CLOSED.

SO ORDERED.

/s/ JOANNA SEYBERT_____
Joanna Seybert, U.S.D.J.

Dated:     March 29, 2016
           Central Islip, New York